Walter H. and Leonore ANNENBERG,
Petitioners,

v.

COMMONWEALTH of Pennsylvania and
Thomas W. Corbett, Jr., Attorney Gener-
al of the Commonwealth of Pennsylva-
nia and Board of Commissioners of the
County of Montgomery, being Richard
Buckman, Joseph Hoeffel, and Mario
Mele (solely in their official capacities),
and Board of Assessment Appeals of the
County of Montgomery, and County of
Montgomery, Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 9, 1996.

Decided Dec. 23, 1996.

Peter J. Picotte, II, Philadelphia, for petitioners.

Daniel J. Doyle, Senior Deputy Attorney General, Harrisburg, for respondents, Commonwealth of Pennsylvania.

Thomas W. Corbett, Jr., and Steven H. Lupin, Lansdale, for respondent, Board of Commissioners of the County of Montgomery.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, FRIEDMAN, FLAHERTY and LEADBETTER, JJ.

SMITH, Judge.

Walter H. and Leonore Annenberg (Taxpayers) have filed a petition for review in the nature of a complaint for declaratory and injunctive relief in this Court's original jurisdiction against the Commonwealth of Pennsylvania and Thomas W. Corbett, Jr., Attorney General (together, Commonwealth) and also against the Board of Commissioners of the County of Montgomery and each Commissioner in his official capacity, the Board of Assessment Appeals of the County and the County itself (collectively, County).

Taxpayers seek a declaration that the Act of June 17, 1913, P.L. 507, *as amended*, 72 P.S. §§ 4821—4902, commonly known as the County Personal Property Tax Law, violates the Commerce Clause of the United States Constitution, U.S. Const. art. I, § 8, cl. 3, and is therefore null and void insofar as it imposes a tax on any corporate stock held by them. They also request a permanent injunction against the Commissioners and the Board of Assessment Appeals prohibiting them from imposing and collecting the tax on any shares of corporate stock that Taxpayers own.

I

Both the Commonwealth and the County have filed preliminary objections. They assert that this Court lacks original jurisdiction over this matter because the Commonwealth is not an indispensable party, as is required for this Court's original jurisdiction under Section 761(a)(1) of the Judicial Code, *as amended*, 42 Pa.C.S. § 761(a)(1), and because original jurisdiction lies in the Board of Assessment Appeals or the Court of Common Pleas of Montgomery County.

Section 1 of the County Personal Property Tax Law, 72 P.S. § 4821, provides in part:

All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident ... is hereby made taxable annually for county purposes ... at a rate not to exceed four mills of each dollar of the value thereof ... that is to say ... all shares of stock in any ... corporation ... created or formed under the laws of this Commonwealth or of the United States, or of any other state or government, except shares of stock in any ... corporation ... liable to or relieved from the capital stock or franchise tax for State purposes under the laws of this Commonwealth....

Section 1.1, added by Section 1 of the Act of April 18, 1978, P.L. 56, 72 P.S. § 4821.1, provides that "the county commissioners of each county ... shall have the power to determine whether or not to impose and collect the taxes permitted under the provisions of this law."

Taxpayers commenced their action following the issuance of the decision of the United States Supreme Court in *Fulton Corp. v. Faulkner*, — U.S. —, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). The Supreme Court held that a North Carolina statewide "intangibles tax" imposed on corporate stock holdings, with an exemption tied to the proportion of the overall business of the corporation that was performed within the state, facially discriminated against interstate commerce by taxing a transaction or incident more heavily when it crossed state lines than when it occurred entirely within a state.

Noting that facially discriminatory taxes have been upheld where they were shown to be truly "compensatory," that is, designed simply to make interstate commerce bear a burden already borne by intrastate commerce, the Court restated the three-pronged test for compensatory taxes. The state must identify the intrastate tax burden for which it is attempting to compensate; the tax must be shown to roughly approximate but not to exceed the intrastate tax; and the events

that are taxed must be shown to be sufficiently similar in substance to serve as exclusive proxies for each other. As to the third prong, the Court noted that the determination of whether a tax burden is shifted out of state rather than borne by in-state producers and consumers requires complex factual inquiries. The Court referred to the difficulty of comparing the economic incidence of state taxes paid by different taxpayers upon different transactions as an explanation of why it had so seldom recognized a valid compensatory tax outside the context of sales taxes and use taxes, which require no economic incidence analysis because they are functional equivalents of one another.

Taxpayers own stock of corporations that do no business in the Commonwealth. They contend that the county personal property tax discriminates against interstate commerce by discriminating against corporations not doing business or having a taxable situs within the Commonwealth. The tax assertedly impairs such corporations' ability to raise capital in any county that imposes the tax because potential investors in such counties know that any earnings from investment in such stocks will be reduced by the amount of the tax, whereas similar investment in Pennsylvania corporations will not. Taxpayers argue that this is the same effect held to violate the Commerce Clause in *Fulton Corp.*.

## II

■ This Court turns first to the objection of the County that this Court lacks subject matter jurisdiction because exclusive original jurisdiction lies in the Board of Assessment Appeals and the Court of Common Pleas of Montgomery County.[1] The County notes that cases have frequently held that original jurisdiction in this Court is improper where exclusive jurisdiction has been granted to another tribunal.[2] The County refers to Section 5.1 of the County Personal Property Tax Act, added by Section 3 of the Act of July 3, 1947, P.L. 1249, 72 P.S. § 4844.1, which provides that any resident against whom an assessment is made may petition the board of revision of taxes or the county commissioners for a reassessment, setting forth the ground upon which it is claimed that the assessment is erroneous or unlawful; if the petitioner is not satisfied with the resulting action, he or she has the right to appeal to the court of common pleas.

In addition, the County refers to Section 1(a) of the Act of May 21, 1943, P.L. 349, *as amended*, 72 P.S. § 5566b(a), which provides that when any person or corporation who has paid taxes or made certain other payments to a political subdivision to which it is not legally entitled, then, upon proper filing, the authorities are directed to make refunds. The County notes that Walter H. Annenberg, in his capacity as trustee of the trust under the will of Moses L. Annenberg, has filed an application with the Board of Assessment Appeals pursuant to Section 1(a) in regard to a county personal property tax assessment on the trust, based upon the same allegations as in the present petition for review.[3] The County notes also that numerous other applications for refunds have been filed with the

1. The County also objects to the petition for review as being outside the scope of Pa.R.A.P. 1501, because there has been no determination by a government unit in this case. Taxpayers correctly point out that pursuant to Pa.R.A.P. 1501(a)(3), the petition for review is the proper filing to commence an original jurisdiction action in this Court in matters including requests for injunctions and declaratory judgments. Actions properly in this Court's original, as opposed to appellate, jurisdiction do not turn upon the existence of a determination by a government unit. *See* 1 G. Darlington, K. McKeon, D. Schuckers, K. Brown, Pennsylvania Appellate Practice 2d, § 1501:6 (1995).

2. *See, e.g., Nason v. Commonwealth*, 516 Pa. 517, 533 A.2d 435 (1987) (original jurisdiction in

mandamus in Commonwealth Court was improper where statutes provide for appeal to court of common pleas for persons aggrieved by decision of local agency).

3. Walter H. Annenberg, in his capacity as Sole Trustee of the Trust Under Will of Moses L. Annenberg, has also filed a petition for review in this Court's original jurisdiction at 344 M.D. 1996, seeking declaratory and injunctive relief as well as a preliminary injunction and summary relief, based upon the same allegations and arguments as in the present case.

Taxpayers also filed a petition for preliminary injunctive relief and an application for summary relief in connection with the petition for review in the present case.

Board of Assessment Appeals and that, in addition, nine separate suits have been brought in the Court of Common Pleas of Montgomery County based on allegations virtually identical to those of the present case.

In response, Taxpayers assert that the controlling principles are found in *Borough of Green Tree v. Board of Property Assessments, Appeals and Review of Allegheny County,* 459 Pa. 268, 328 A.2d 819 (1974) (plurality opinion). There a borough and individual residents filed a complaint in equity in the court of common pleas against the county board of assessments and appeals challenging the constitutionality of Section 7 of the Act commonly known as the Second Class County Assessment Law, Act of June 21, 1939, P.L. 626, *as amended,* 72 P.S. § 5452.7, which authorizes the board of assessments and appeals to divide the county into three districts and to conduct triennial assessments for each of the districts in turn. The court of common pleas dismissed for lack of jurisdiction because an adequate statutory remedy existed, and this Court affirmed.

The Supreme Court reversed. The Court first noted that the mere fact that a constitutional question is raised does not, without more, vest jurisdiction in equity but that equity could adjudicate where there is an absence of a statutorily prescribed remedy or a showing that an existing remedy is inadequate in the circumstances. The Court noted that the functions of an administrative agency do not include determining the constitutionality of its own enabling legislation.

> The more clearly it appears that the question raised goes directly to the validity of the statute the less need exists for the agency involved to throw light on the issue through exercise of its specialized fact-finding function or application of its administrative expertise.

*Borough of Green Tree,* 459 Pa. at 281, 328 A.2d at 825. Because the board of assessments and appeals in that case could contribute little to the determination of the constitutionality of the triennial assessment provision, the Supreme Court held that in those circumstances the statutory remedy was not adequate, and jurisdiction did lie in equity in the court of common pleas.

■ As Taxpayers note, a statutory remedy is inadequate if it does not adequately allow adjudication of the issue the petitioner raises or if it allows irreparable harm to occur during pursuit of that remedy. *LCN Real Estate, Inc. v. Borough of Wyoming,* 117 Pa.Cmwlth. 260, 544 A.2d 1053 (1988). They argue that the present case presents a direct attack on the constitutionality of the County Personal Property Tax Act and that the procedure for filing a claim with the Board of Assessment Appeals for a refund under Section 1 of the Act of May 21, 1943, 72 P.S. § 5566b, does not permit adjudication of the constitutional issue.

■ The present case potentially involves the attempted justification of a tax on holdings of corporate stock as a compensatory tax under *Fulton Corp.* and its predecessors. As was noted in *Fulton Corp.,* however, such an analysis requires " 'complex factual inquiries,' " *Fulton Corp.,* —— U.S. at ——, 116 S.Ct. at 859 (quoting *Commonwealth Edison Co. v. Montana,* 453 U.S. 609, 619, 101 S.Ct. 2946, 2954, 69 L.Ed.2d 884 n8 (1981)), and the Court previously "[was] likewise unwilling to 'plunge ... into the morass of weighing comparative tax burdens by comparing taxes on dissimilar events[.]' " *Id.* (quoting *Oregon Waste Sys., Inc. v. Department of Environmental Quality of Oregon,* 511 U.S. 93, 105, 114 S.Ct. 1345, 1353, 128 L.Ed.2d 13 (1994)). Here, such detailed factual development may well be necessary to determine the underlying question of the constitutionality of the county personal property tax.

The Court agrees with Taxpayers that the Board of Assessment Appeals may not be a proper forum under the circumstances of this case. The Board of Assessment Appeals has expertise in applying the tax laws of the Commonwealth and in dealing with the kinds of complicated questions of valuation and of liability or exemption that frequently arise in ordinary assessment appeals. However, the Board, as in *Borough of Green Tree,* has no expertise in deciding whether a statute violates the United States Constitution and no capacity to decide such a question. Accordingly, any statutory remedies involving the

Board are not adequate for determining the issue raised in this case. The present case, therefore, is closely analogous to *Borough of Green Tree*, so that original jurisdiction does properly lie in a court of equity.

### III

■ The question remains, however, whether such a court should be this Court or the court of common pleas. Section 761(a) of the Judicial Code provides for original jurisdiction in Commonwealth Court of all civil actions or proceedings "(1) [a]gainst the Commonwealth government, including any officer thereof, acting in his official capacity," with certain enumerated exceptions not relevant here. As the County and the Commonwealth emphasize, however, the Commonwealth must be an indispensable party to the action for Section 761(a)(1) to apply. *Piper Aircraft Corp. v. Insurance Co. of North America*, 53 Pa.Cmwlth. 209, 417 A.2d 283 (1980). An indispensable party generally is one whose rights are so connected with the claims of the litigants that no relief can be granted without infringing those rights. *Id.*

The Commonwealth argues that no case or controversy exists between it and Taxpayers, noting that the County rather than the Attorney General or the Commonwealth levies the tax and collects it, as the County is permitted but not required to do under the statute. In *Chester Upland School Dist. v. Commonwealth*, 90 Pa.Cmwlth. 464, 495 A.2d 981 (1985), the Court held that simply naming government departments and officials charged with the general duty of upholding the laws did not establish an actual controversy. Further, the Commonwealth contends that the existence of a challenge to the constitutionality of a statute does not automatically make the Commonwealth an indispensable party, noting the provisions of Pa. R.C.P. No. 235, which require notification to the Attorney General when a constitutional challenge to a statute is raised but not the naming of the Attorney General or the Commonwealth as a party to the action.

Taxpayers respond that the United States Supreme Court has held that a state legislature must act affirmatively to fashion an appropriate legislative remedy for an unconstitutionally discriminatory tax, citing *McKesson Corp. v. Division of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990). Thus this matter cannot end without the legislature's becoming involved. Also, this Court has stated that if the Attorney General believes that a statute is unconstitutional, he or she has the right and indeed the duty to bring an action in the courts or to prepare a submission to the General Assembly of an advisable revision. Further, the concept of indispensability is expanded under Section 7540(a) of the Declaratory Judgments Act, 42 Pa.C.S. § 7540(a), which requires the joinder in a declaratory judgment proceeding of "all persons ... who have or claim any interest which would be affected by the declaration...." Taxpayers assert that the Commonwealth has an interest in whether one of its statutes is held to be unconstitutional.

Taxpayers contend that this Court's decisions require the presence of the Commonwealth and the Attorney General in actions challenging the constitutionality of tax statutes. In *City of Pittsburgh v. Commonwealth*, 112 Pa.Cmwlth. 188, 535 A.2d 680 (1987), *aff'd*, 522 Pa. 20, 559 A.2d 513 (1989), for example, where the city and mayor challenged local tax enabling and home rule charter act provisions, the Governor and the Secretary of Revenue were dismissed as parties but this Court stated that the Attorney General was a proper party to defend, in view of his duty to defend or enforce a statutory limitation on the city's taxing authority.

■ The Court is not persuaded by Taxpayers' arguments. Any requirement for the legislature to act to remedy an unconstitutionally discriminatory tax has no relation to the proceeding in which the constitutionality is determined, and Taxpayers have requested no relief against the Commonwealth. In addition, no judgment or decree in favor of Taxpayers in this case would require any action on the part of any Commonwealth agency. *McKesson* summarized by stating that the state might meet its obligation to provide a clear and certain remedy for the unconstitutional deprivation of tax moneys:

through any form of relief, ranging from a refund of the excess taxes *paid by petitioner* to an offsetting charge to previously favored distributors, that will cure any unconstitutional discrimination against interstate commerce during the contested tax period. The State is free to choose which form of relief it will provide, so long as that relief satisfies the minimum federal requirements we have outlined.

*McKesson,* 496 U.S. at 51–52, 110 S.Ct. at 2257–58 (emphasis added) (footnote omitted).

Taxpayers' citation to Section 7540(a) of the Declaratory Judgments Act ignores the provision in Section 7540(b), which relates expressly to tax matters. It provides that in proceedings relating to taxes the appropriate taxing authority shall be notified, "but if such taxing authority does not enter its appearance, the requirements of this section shall nevertheless be satisfied if the court considers that the interests of the taxing authority are adequately represented." Unlike cases such as *Fulton Corp.,* where the tax at issue was imposed statewide, and the proper party to defend was the state secretary of revenue, here the state has authorized counties to impose a particular tax or not, and the state plays no role in a county's assessment and collection of the tax or use of the tax revenue. Here Montgomery County is the taxing authority, and it is representing its own interest. Therefore, in the present circumstances, the Court may not read Section 7540(b) as making the Commonwealth indispensable.

This Court spoke clearly on the issue of Commonwealth indispensability in the case of *Pennsylvania State Educ. Ass'n v. Department of Education,* 101 Pa.Cmwlth. 497, 516 A.2d 1308 (1986). There an education association and individuals sought a declaration from this Court invalidating an agreement between school districts to transfer students and an injunction against their boards from enforcing it. The Court noted principles discussed above concerning joinder of the Commonwealth and added that a Commonwealth agency should not be declared an indispensable party unless meaningful relief cannot conceivably be afforded without the involvement of the sovereign itself, citing *Spring-*

*dale Township v. Allegheny County Board of Property Assessment,* 78 Pa.Cmwlth. 100, 467 A.2d 74 (1983). Concluding that the involvement of the Department of Education was minimal, the Court sustained the Department's demurrer and transferred the case to the court of common pleas.

Similarly, in the present case, the involvement of the Commonwealth is minimal. As noted above, the Commonwealth does not elect to impose the tax and it does not collect the tax. The power of the Attorney General to recommend revisions of statutes to the legislature is far too tangential an interest to make him indispensable. Therefore, the Commonwealth has not been shown to be an indispensable party to this action. The proper forum for the original adjudication of this matter is the court of common pleas sitting in equity. Adjudication there will provide for the development of a complete factual record and for the exercise of judicial analysis by the common pleas court in the first instance. From there an appeal may be taken to this Court to provide a determination having statewide effect.

Accordingly, the preliminary objections of the Commonwealth and the County must be sustained, and this case is transferred to the equity side of the Court of Common Pleas of Montgomery County. As noted above, the validity of the county personal property tax is the subject of a number of challenges in the Court of Common Pleas of Montgomery County as well as in proceedings filed with the Board of Assessment Appeals. This question is one of grave concern to this County and to the 27 others that currently impose it. Therefore, this case is transferred to the equity side of the Court of Common Pleas of Montgomery County with instructions to provide expedited consideration.

### ORDER

AND NOW, this 23rd day of December, 1996, the preliminary objections of the Commonwealth of Pennsylvania and the Attorney General and the County of Montgomery et al. to the petition for review are sustained, and this case is transferred to the Court of Common Pleas of Montgomery County sitting in equity, with instructions to provide

expedited consideration of the Petitioners' action.

COLINS, President Judge, concurring.

I concur with the majority's decision to transfer this matter to the Court of Common Pleas of Montgomery County for expedited consideration. This matter should be resolved by the trial court forthwith.

However, I disagree with the majority's conclusion that any complex factual inquiries are necessary. This tax is facially unconstitutional and is on all fours with the taxing statutes in *Fulton Corp. v. Faulkner,* ——— U.S. ———, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996). I also disagree with the majority's conclusion that this case potentially involves the attempted justification of the tax as a compensatory tax. Although the Supreme Court in *Fulton* noted that a facial discriminatory tax may be upheld where the tax is shown to be compensatory and stated a three-prong test, that inquiry too is strictly a matter of law. Furthermore, the respondents do not assert that the Montgomery County personal property tax is compensatory.

I also wish to emphasize the need to have this matter resolved with dispatch. The Annenbergs have properly exercised their legal rights and will receive a refund once this tax is stricken. However, no such remedy will inure to the benefit of the countless middleclass taxpayers who lack the resources to mount a similar challenge. Prolonging this litigation will result in the continued collection of an illegal tax and will merely delay the inevitable. The majority's decision has "scotched the snake, not killed it." [1]

LEADBETTER, Judge, dissenting.

I respectfully dissent.

The Commonwealth has been named as a defendant in this action and a substantial and viable case or controversy exists between it and petitioners. Thus, the Commonwealth is a proper party to this action, and we have original jurisdiction.[1] 42 Pa.C.S. § 761. *See, e.g., City of Pittsburgh v. Commonwealth,* 112 Pa.Cmwlth. 188, 535 A.2d 680 (1987), *aff'd,* 522 Pa. 20, 559 A.2d 513 (1989); *Leonard v. Thornburgh,* 78 Pa.Cmwlth. 216, 467 A.2d 104 (1983).

As was noted by our Supreme Court in a seminal case construing our original jurisdiction, "[t]he Commonwealth Court is intended to provide a judicial forum for the uniform and consistent resolution of questions of statewide impact." *T & R Painting Co. v. Philadelphia Housing Auth.,* 466 Pa. 493, 498, 353 A.2d 800, 802 (1976). *See also, CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 640 A.2d 372 (1994).[2] A clearer case mandating the exercise of such jurisdiction could hardly be envisioned. This tax, pursuant to the state statute here challenged,[3] has been put into effect in 28 counties in Pennsylvania. The question of its continued viability after *Fulton Corp. v. Faulkner,* —— U.S. ———, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), is of major significance to the taxpayers who continue to pay it and the counties who now depend upon its revenue stream, not just the Annenbergs and Montgomery County. As President Judge Colins has perceptively noted in his concurring opinion, prompt resolution of this issue is of even greater importance to the taxpayers who are not parties to this action than to the Annenbergs, who have obtained preliminary injunctive relief. The other 27 counties who will not be bound by an order of the Court of Common Pleas of Montgomery County have an equal need for certainty in

---

**1.** William Shakespeare, Macbeth, act 3.

**1.** Were I of the view that this case should proceed beyond this stage, I would sustain the preliminary objections of the Attorney General. Under the principles stated in *Hetherington v. McHale,* 10 Pa.Cmwlth. 501, 311 A.2d 162 (1973), *rev'd on other grounds,* 458 Pa. 479, 329 A.2d 250 (1974), I believe the proper role of the Attorney General is to act as counsel to the Commonwealth, not as a separate party defendant.

**2.** It may be noted that *CRY* involved the doctrine of indispensable parties because the relevant state agency, DER, had not been named as a party. For reasons almost all of which apply to this case, DER was found to be indispensable, and the case was found to be within our exclusive original jurisdiction.

**3.** Act of June 17, 1913, P.L. 507, *as amended,* 72 P.S. §§ 4821–4902. ("Personal Property Tax").

their budgeting decisions. In addition, the legislature is left, at least for the present, without guidance as to whether amendatory legislation is necessary if the counties are to continue to rely upon a personal property tax. The ability to provide prompt statewide resolution of such questions is a fundamental underpinning of our original jurisdiction, and I believe the public interest mandates a duty to exercise it in this case.

I further agree with President Judge Colin's concurrence that this case does not necessitate any factfinding. The only factual inquiry identified in *Fulton* related to the analysis of whether the tax at issue was a valid compensatory tax. That issue has not been raised here, and defendants specifically stated at oral argument that they do not contend that the Personal Property Tax is compensatory. Thus, this case presents only a question of facial unconstitutionality and there are no disputed facts material to that determination.

Because I do not find that the Pennsylvania Personal Property Tax differs in any respect material to the Commerce Clause of the United States Constitution from the North Carolina intangibles tax struck down in *Fulton*, I would overrule the defendants' preliminary objections and grant the petitioners' motion for summary relief.

McGINLEY, J., joins in this dissent.