Gary ENGLISH, Petitioner

v.

COMMONWEALTH of Pennsylvania, Mark Schweiker, Governor, Commonwealth of Pennsylvania, Larry P. Williams, Secretary, Secretary of the Pennsylvania Department of Revenue, Commonwealth of Pennsylvania, Barbara Hafer, Treasurer of Commonwealth of Pennsylvania, and Allegheny County Council, County of Allegheny, Pennsylvania, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 16, 2004.

Decided March 31, 2004.

Gary English, petitioner, pro se.

Terrence F. McVerry, George M. Janocsko, Caroline Liebenguth and Kathryn M. Wakefield, Pittsburgh, for respondent, Allegheny County Council.

Devon M. Jacob, Harrisburg, for respondent, Commonwealth.

BEFORE: COLINS, President Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Commonwealth of Pennsylvania; Mark Schweiker, former Governor of the Commonwealth of Pennsylvania; Larry P. Williams, former Secretary of the Commonwealth of Pennsylvania Department of Revenue; Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania (collectively Commonwealth) file preliminary objections to the July 11, 2002 *pro se* petition for review (Petition) filed by Gary J. English (Petitioner) in the nature of an action in mandamus and bill of equity.

The Petition challenges the constitutionality of the law commonly referred to as Act 77 of the Second Class County Code.[1] RAD is an independent, special purpose unit of local government covering the geographic region of Allegheny County. Section 3152 B of Act 77[2] authorizes Allegheny County to levy a county-wide, 1% sales and use tax (RAD tax) to carry out the purposes of RAD. These purposes primarily include the funding of regional assets,[3] assistance to municipalities within Allegheny County,[4] and tax relief programs.[5]

Count 1 of the Petition alleges that Act 77 violates Article I, Section 2, PA. CONST. art. I, § 2, relating to political powers. Counts 2 through 5 assert that Act 77 violates Article III, Section 1, PA. CONST. art. III, § 1, relating to the passage of laws; Article III, Section 3, PA. CONST. art. III, § 3, relating to form of bills; Article III, Section 31, PA. CONST. art. III, § 31, relating to delegation of taxing powers; and Article VIII, Section 1, PA. CONST. art. VIII, § 1, relating to uniformity of taxation.[6]

The Petition invokes this Court's original jurisdiction and contains a demand for both injunctive and declaratory relief. On August 18, 2003, the Commonwealth filed preliminary objections to the Petition. Petitioner filed a brief in opposition thereto on October 18, 2003 and by leave of Court, he subsequently filed exhibits in support of the Petition.

The Commonwealth maintains that the Petition fails to state a claim upon which relief may be granted. As such, we must resolve the following issues: (1) whether the Pennsylvania Constitution af-

---

1. Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §§ 3101–6302. Act 77 of the Second Class County Code, which creates the Allegheny Regional Asset District (RAD), was added by Section 2 of the Act of December 22, 1993, P.L. 529, 16 P.S. §§ 6101–B—6173–B.

2. 16 P.S. § 6152–B.

3. Sections 3130–B—3131–B of Act 77, 16 P.S. §§ 6130–B—6131–B.

4. Section 3170–B of Act 77, 16 P.S. § 6170–B.

5. Section 3171–B of Act 77, 16 P.S. § 6171–B.

6. Petitioner also maintains that the Allegheny County defendants violated certain provisions of the Pennsylvania Constitution. By order dated February 6, 2003, however, this Court dismissed the Petition as against them. *English v. Commonwealth*, 816 A.2d 382 (Pa. Cmwlth.2003) (*English I*).

fords Petitioner an unfettered, substantive right to challenge Act 77 through the initiative and referendum process; (2) whether Act 77 was enacted in an unconstitutional manner; (3) whether Act 77 represents an unconstitutional delegation of taxing power; and (4) whether Act 77 violates the Pennsylvania Constitutional provision requiring uniformity of taxation.[7]

■ Article I, Section 2 of the Pennsylvania Constitution reads as follows:

All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper.

PA. CONST. art. I, § 2. This constitutional provision limits the power of state government to infringe on the natural rights of citizens and recognizes the right to alter, reform or abolish government. *English I.*

■ Count 1 of the Petition alleges that the Commonwealth violated Article I, Section 2 of the Pennsylvania Constitution by "preventing the public from participating in the process" of enacting Act 77. (¶ 39) The only allegations Petitioner makes in support of this claim are contained in paragraphs 40 through 44 wherein he states that Representative Fred Trello's request to delay the process, Representative

Elaine Farmer's[8] request to suspend the rules, and Senator Melissa Hart's[9] proposal to amend were denied. (¶¶ 40, 41, 42) Petitioner also alleges in Count 1 that Legislators were "blackmailed" into supporting Act 77. (¶ 44)

We fail to see how these factual allegations, if taken as true, could support a claim that Act 77 violates Article I, Section 2 of the Pennsylvania Constitution by precluding citizens from challenging RAD through the agenda initiative and voter referendum process.

As the Commonwealth argues, neither Article I, Section 2 nor any other provision of the Pennsylvania Constitution provides an unlimited right to challenge laws via initiative and referendum. Further, the language of Article I, Section 2 does not contradict the basic rule of law that the General Assembly is authorized to exclude certain legislative matters from the initiative and referendum process. *English I*; *Williams v. Rowe*, 3 Pa.Cmwlth. 537, 283 A.2d 881 (1971). Consequently, we grant the demurrer of the Commonwealth as to Count 1 of the Petition.

■ Article III, Section 1 of the Pennsylvania Constitution provides that a bill cannot be altered or amended to change its original purpose. Provisions which are added to an original bill must either (1) assist in carrying out the bill's main objective or (2) be germane to the bill's subject as reflected in its title. *City of Philadel-*

7. When ruling on preliminary objections, we accept as true all well-pleaded allegations of material fact and all reasonable inferences deducible therefrom. *Allegheny Sportsmen's League v. Ridge*, 790 A.2d 350 (Pa.Cmwlth. 2002). We are not, however, required to accept as true conclusions of law or expressions of opinion. *Id.* A demurrer, which results in the dismissal of a claim or suit, should be sustained only where it appears with certainty that the law permits no recovery under the allegations pleaded and any doubt must be

resolved in favor of overruling the demurrer. *Id.*

8. Representatives Trello and Farmer represented the 45th and 28th Legislative Districts, respectively, which include part of Allegheny county.

9. Senator Hart represented the 40th Senate District which includes parts of Allegheny, Butler and Westmoreland counties.

*phia v. Commonwealth,* 575 Pa. 542, 838 A.2d 566 (2003). In addition, Article III, Section 3 of the Pennsylvania Constitution requires that each bill have only one subject and that it be clearly expressed in the title. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986).

■ An enrolled bill is one which has been certified by the House and Senate, signed by the Governor and lodged with the Secretary of the Commonwealth. An enrolled bill is strongly presumed to have been legally adopted and the judiciary generally cannot go behind its face to determine if constitutional procedural requirements were followed. *City of Philadelphia; Harrisburg Sch. Dist. v. Zogby,* 574 Pa. 121, 828 A.2d 1079 (2003).

■ In support of his claim that Act 77 violates these constitutional provisions, Petitioner contends that: (1) Act 77 originated as House Bill 659, Printer's Number 723 of 1993 (HB 659) and was titled "[a]n act relating to counties of the second class and second class A; amending, revising, consolidating and changing the laws relating thereto, further providing for the jurisdiction of the [Allegheny County Coroner];" (2) HB 659 was introduced at the request of the Allegheny County Coroner; and (3) the purpose of HB 659 was to address situations of concern to the Allegheny County Coroner only. (¶¶ 49–52, 54–55) He further maintains that by amending HB 659 four times, thereby adding 13 lines to its title and adding 29 pages to its text, the Legislature changed the original purpose of the bill and passed a bill containing more than one subject, in violation of Article III, Sections 1 and 3.

In *Consumer Party of Pennsylvania,* the Supreme Court addressed the "single purpose" provision of the Pennsylvania Constitution, determining that its intent was to put members of the General Assembly and others on notice of a bill's contents so that they could vote on it with circumspection, not to prohibit any material change in a piece of legislation during the enactment process. *Consumer Party of Pennsylvania.*

■ We may "go behind" the statute as enacted if the Petition contains sufficient allegations indicating confusion or deception during the legislative process. *City of Philadelphia.* Only in limited, compelling circumstances, will we look beyond the certified law to the enactment process. *Fumo v. Pennsylvania Pub. Utility Comm'n,* 719 A.2d 10 (Pa.Cmwlth. 1998).

■ There is no dispute that HB 659 is an enrolled bill. Here, Petitioner fails to allege facts to support his conclusion that the Legislature or the public were deceived as to the title or the content of HB 659 while it proceeded through the General Assembly. Further, the Petition contains no averments which would support a conclusion that the members of the General Assembly were without notice regarding the contents of HB 659 when they voted on it. Rather, Petitioner refers to a few out-of-context comments made by several Legislators during the debate process. It is not appropriate to consider the comments and impressions of individual legislators when determining the validity of an enrolled bill. *City of Philadelphia.*

Although the original title of HB 659 referred specifically to the jurisdiction of the coroner and only generally to amendments to the Second Class County Code (Exhibit 3), it was always germane to the single subject of amending the Second Class County Code. Significantly, as Petitioner's Exhibit 5 indicates, specific reference to RAD was ultimately included in the title of HB 659 during its progression through the General Assembly.

Therefore, we find that Petitioner has failed to allege compelling circumstances which, if true, would warrant an inquiry by this Court into the manner in which Act 77 was enacted. Accordingly, we sustain the preliminary objections of the Commonwealth to Counts 2 and 3 of the Petition.

We next address the Commonwealth's demurrer to Petitioner's allegations that Act 77 violates Article III, Section 31 of the Pennsylvania Constitution which provides, in part, as follows:

> The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever.

PA. CONST. art. III, § 31. One purpose of this section is to protect against exercise of taxing power by officials not subject to the control of the people. *Wilson v. Sch. Dist. of Philadelphia*, 328 Pa. 225, 195 A. 90 (1937).

As the Commonwealth argues, Petitioner's allegation that Act 77 constitutes an unconstitutional delegation of taxing authority to RAD is without legal merit. RAD is a special purpose unit of local government created by the General Assembly to carry out specific administrative functions, as allowed by Article IX, Section 7 of the Pennsylvania Constitution. PA. CONST. art. IX, § 7.

Act 77 does not authorize RAD or its governing board to levy taxes. Rather, the exclusive power to levy the RAD tax is vested in the governing body of Allegheny County, pursuant to Section 3152–B(a) of Act 77, which provides that "[t]he governing body of the county may levy and assess upon each separate sale at retail of tangible personal property or services ... a tax on the purchase price." 16 P.S. § 6152–B(a).[10]

Accordingly, there is no violation of Article III, Section 31 of the Pennsylvania Constitution and we sustain the preliminary objection of the Commonwealth to Count 4 of the Petition.

Finally, the Commonwealth demurs to Petitioner's allegations that the RAD tax violates the Uniformity Clause of the Pennsylvania Constitution, which provides as follows:

> All taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.

PA. CONST. art. VIII, § 1.

Tax enactments are presumed to be constitutionally valid and the burden of proving that a classification is unreasonable rests with the challenging party. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988) (Philadelphia tax did not violate the Uniformity Clause of the Pennsylvania Constitution because the benefit received and the burden imposed were proportionate). The test is whether the classification is rationally related to a legitimate governmental interest and any doubt as to constitutionality is to be re-

---

10. We also reject Petitioner's summary allegation that a similar statute applicable to first class cities, the Pennsylvania Intergovernmental Cooperation Authority Act for Cities of the First Class (PICA Act), Act of June 5, 1991, P.L. 9, *as amended*, 53 P.S. §§ 12720.101–12720.709, violates Article III, Section 31 of the Pennsylvania Constitution. As is the case with Act 77, Section 503(a) of the PICA Act provides that the *governing body* of the municipality is authorized to levy the tax, not the special purpose governmental unit. 53 P.S. § 12720.503(a).

solved in favor of upholding the statute. *Id.*

Petitioner asserts that the relevant classifications are non-residents and residents of Allegheny County, arguing that this distinction is unreasonable because the RAD tax: (1) applies to purchases made by non-residents for goods or services purchased within Allegheny County, and (2) applies to certain tangible items purchased by Allegheny County residents at a situs beyond the territorial limits of Allegheny County.

In *City of Allentown v. MSG Assoc., Inc.,* 747 A.2d 1275 (Pa.Cmwlth.2000) we held that the party challenging a tax statute must establish that there is no reasonable difference between the classes of taxpayers sufficient to justify different tax treatment. As long as the classification is based on some standard capable of reasonable comprehension, it will not violate the uniformity requirement. *Id.*

The Commonwealth maintains that the RAD tax is uniform because it is imposed on a class of purchasers and users who have a substantial geographical nexus or connection to Allegheny County by their purchase of the subject goods or services in the County. It also contends that the classification created by Section 3153–B of Act 77,[11] the special situs tax provision, is reasonable because (1) the items subject to the RAD tax will ultimately have a substantial connection with the County by their use and/or registration in Allegheny County, and (2) it is intended to prevent the flight of businesses moving out of Allegheny County to avoid payment of the RAD tax and to protect those businesses which remain. We believe these to be legitimate distinctions. Further, we find that the allegations set forth in the Petition fail to support a conclusion that any classification of taxpayers subject to the RAD tax is unreasonable.[12] Therefore, we grant the Commonwealth's preliminary objections to Count 5 of the Petition.

Based on the above, we sustain the preliminary objections of the Commonwealth in the nature of a demurrer and dismiss the Petition, with prejudice.

## ORDER

AND NOW, this 31st day of March, 2004, the preliminary objections in the nature of a demurrer filed by Respondents Commonwealth of Pennsylvania; Mark Schweiker, former Governor of the Commonwealth of Pennsylvania; Larry P. Williams, former Secretary of the Commonwealth of Pennsylvania Department of Revenue; and Barbara Hafer, Treasurer of the Commonwealth of Pennsylvania are hereby SUSTAINED and the Petition for Review is DISMISSED with prejudice.

---

11. 16 P.S. § 6153–B. This section provides that for motor vehicle, aircraft, motorcraft and utility service purchases, the RAD tax shall be imposed based on the purchaser's county of domicile, presumably where the goods and services will be used.

12. We find the case of *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985) to be distinguishable. In *Monzo,* the Supreme Court determined that the Allegheny County hotel room tax was unconstitutional because a substantial portion of the class taxed was afforded no benefits whatsoever while being significantly burdened. Here, although paragraph 68 of the Petition contains an averment that 25% of the revenue from the RAD tax comes from non-residents, even if proven true, this is clearly insufficient to establish an unequal burden.